NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIAM FAULMAN, et al., | : | |
| Plaintiffs, | : | Civil No. 04-5083 (AET) |
| v. | : | MEMORANDUM & ORDER |
| SECURITY MUTUAL FINANCIAL LIFE INSURANCE COMPANY, et al., | : | |
| Defendants. | : | |

THOMPSON, U.S.D.J.

I.   Introduction

This matter is before the Court on (1) Defendant Security Financial Life Insurance Company's ("Defendant") motion to dismiss Plaintiffs' ERISA claims; (2) Defendant's motion to strike Exhibit O; (3) Plaintiffs' motion for class certification; and (4) the parties' cross-motions for partial summary judgment. The Court has decided these motions after considering the parties' written submissions, and after hearing oral argument on June 15, 2006 and July 26, 2006. For the reasons set forth below, the Court will deny Defendant's motion to dismiss, Defendant's motion to strike, Plaintiffs' motion for class certification, and Plaintiffs' cross-motion for partial summary judgment. The Court will grant in part and deny in part Defendant's motion for partial summary judgment.

II.   Background

Plaintiffs are a small business, U.S. Investment Advisors, Inc. ("USIA"), and its owners,

William and Michael Faulman (the "Faulman Brothers").  Plaintiffs allege that Defendant designed, marketed, and sold to them a flawed and over-priced life insurance product through a sham benefit plan called the Employers Participating Insurance Cooperative Welfare Plan and Trust ("EPIC") Plan.  Plaintiffs participated in the EPIC Plan through a plan created by USIA as a participant in the EPIC Plan (the "USIA Plan").  The EPIC Plan was allegedly marketed to Plaintiffs as a way to legally earn tax savings in the short-term, while gaining tax-free assets and tax-free retirement income in the long-term.  Under the EPIC Plan, participants put tax-deductible life insurance payments into a reserve account that could later be borrowed against for retirement income.  The EPIC Plan, however, was not sanctioned under the tax code, and in 1995, the IRS began to investigate the EPIC Plan and similar plans.  Plaintiffs were not investigated, but allege that they became aware of a problem when they discovered that their EPIC Plan reserve account contained no money despite their payment of premiums.  After unsuccessfully demanding the return of their premiums, Plaintiffs converted their policies under the USIA Plan into individual life insurance policies, and brought this proposed class action suit.

On November 18, 2005, Plaintiffs filed their Second Amended Complaint.  In that complaint, Plaintiffs added claims pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and the Florida Unfair Insurance Trade Practices Act ("FUITPA").  On March 20, 2006, Defendant filed a motion for partial summary judgment.  Plaintiffs filed a motion for class certification on March 31, 2006, and also cross-moved for partial summary judgment on April 13, 2006.  Defendant filed a motion to dismiss Plaintiffs' ERISA claims on May 15, 2006 and a motion to strike Exhibit O on June 15, 2006.

III.     Motion to Dismiss

Defendant moves to dismiss Plaintiffs' ERISA claims and ERISA-preempted claims for lack of standing under Fed. R. Civ. P. 12(b)(1).  Whether a plaintiff has standing to sue under ERISA § 502, 29 U.S.C. § 1132, is a jurisdictional question that must be addressed before the merits of the case.  Miller v. Rite Aid Corp., 334 F.3d 335, 341 n.2 (3d Cir. 2003).  In determining whether a plaintiff has standing, a court "accept[s] as true all material allegations set forth in plaintiff['s] complaint and must construe those facts in favor of the plaintiff[]." Mariana v. Fisher, 338 F.3d 189, 205 (3d Cir. 2003).  Standing to sue under ERISA is a question of law. Shawley v. Bethlehem Steel Corp., 989 F.2d 652, 657 n.10 (3d Cir. 1993).  To determine whether Plaintiffs have standing under ERISA, the Court must determine whether the Faulman Brothers are participants, and whether USIA is a fiduciary within the meaning of the applicable statute.  See 29 U.S.C. § 1132(a)(2) (allowing a civil action to be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [for liability for breach of fiduciary duty]"); 29 U.S.C. § 1132(a)(3) (allowing a civil action to be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan").

Before the Court can address the standing issue, it must first determine whether there is an ERISA plan involved.  Here, Plaintiffs are not suing under their converted individual policies, but rather are suing under their pre-conversion policies under the USIA Plan.  As explained below in the Court's discussion of the parties' cross-motions for partial summary judgment, the USIA Plan is an ERISA plan, and is the plan at issue in this case.  See Pergosky v. Life Ins. Co.

of N. Am., No. 01-4059, 2003 U.S. Dist. LEXIS 4460, at *12-13 (E.D. Pa. Mar. 24, 2003) (considering pre-conversion plan policy rights that related to the formation of the conversion policy under ERISA); see also 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer").

ERISA defines a "participant" as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). The Faulman Brothers are still employed by USIA, and allege that they are still covered and eligible to receive a benefit under the USIA Plan through their converted individual policies. This benefit may be affected by restitution of the allegedly missing reserve accounts. In addition, the Faulman Brothers indicate that they converted their policies under the USIA Plan because of Defendant's alleged violations of ERISA. See Leuthner v. Blue Cross & Blue Shield of N.E. Pa., 454 F.3d 120, 129 (3d Cir. 2006) ("[W]e may find that a plaintiff has statutory standing if the plaintiff can in good faith plead that she was an ERISA plan participant or beneficiary and that she still would be but for the alleged malfeasance of a plan fiduciary."). Thus, the Court finds that the Faulman Brothers qualify as participants with standing to pursue claims under ERISA.

A person is an ERISA fiduciary

> with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting

> management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.  Such term includes any person designated under section 405(c)(1)(B) [29 U.S.C. § 1105(c)(1)(B)].

29 U.S.C. § 1002(21)(A).  The Supreme Court has explained that this is a functional test, based on the "<u>functional</u> terms of control and authority over the plan." <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 262 (1993).  In the present case, Plaintiffs argue that USIA is an ERISA fiduciary because it maintains discretionary control over the administration of the USIA Plan.  Plaintiffs also point out that the EPIC Plan documents referred to the participating employers as "named fiduciaries."  <u>See</u> 29 U.S.C. § 1105(c)(1)(B) (regarding designated fiduciaries).  Taking these arguments into account, the Court finds that USIA is a fiduciary with standing under ERISA for the functions that it performs as a plan administrator.  <u>Curcio v. John Hancock Mut. Life Ins. Co.</u>, 33 F.3d 226, 234 & n.10 (3d Cir. 1994).

Because the Court has determined that Plaintiffs have standing under ERISA, it will deny Defendant's motion to dismiss.  Defendant's arguments regarding ERISA preemption will be addressed below in the Court's discussion of the parties' cross-motions for partial summary judgment.

IV.   <u>Motion to Strike</u>

Defendant moves to strike Exhibit O, which was filed as part of Mr. Steven Fram's Certification in support of Plaintiffs' reply brief for their cross-motion for partial summary judgment, and also in support of their motion for class certification.  Exhibit O is a letter from an

attorney regarding certain characteristics of an employee benefit account for a company called Lima Plastics, Inc. Plaintiffs rely on Exhibit O to support their contention that Defendant established separate reserve accounts for single employer plans (such as the USIA Plan) under the EPIC Plan that were not available to all plan participants as part of the general assets of Defendant.

Under Fed. R. Civ. P. 12(f), a party may make a motion to strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Because Defendant seeks to strike an exhibit to a certification filed as part of motion, rather than to strike part of a pleading, Defendant's motion to strike is procedurally incorrect. See Lombard v. MCI Telecomm. Corp., 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998) ("While some courts have employed Rule 12(f) to strike an affidavit or portions thereof, there is no basis in the Federal Rules for doing so . . . . [A c]ourt should 'disregard' inadmissible evidence, not strike that evidence from the record.") (citations omitted); Reed v. Town of Babylon, 914 F. Supp. 843, 859 (E.D.N.Y. 1996) (noting that significant weight could not be given to a letter offered into evidence in part because the letter was not authenticated). However, the Court agrees with Defendant that Exhibit O has not been properly authenticated, and is too vague to be helpful in deciding Plaintiffs' motions. Accordingly, the Court will deny Defendant's motion to strike Exhibit O, but will disregard the exhibit for purposes of Plaintiffs' cross-motion for partial summary judgment and motion for class certification.

V.      Motion for Class Certification

Plaintiffs seek to certify their claim for breach of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109, as a class action under Fed. R. Civ. P. 23. Plaintiffs allege that they are among a

group of over 300 small businesses and their employees who were induced to participate in the EPIC Plan and were promised benefits by Defendant. Plaintiffs allege that Defendant breached its fiduciary duties by providing false and misleading tax information and by converting employer contributions to the EPIC Plan. Under this proposed class action claim, Plaintiffs seek relief in the form of disgorgement of plan assets, confirmation of the existence of reserve accounts, full disclosure of the tax risks of the EPIC Plan, and indemnification in case of adverse tax consequences.

In order for a class to be certified, a plaintiff must satisfy the prerequisites of Fed. R. Civ. P. 23(a), and must also demonstrate that the action qualifies as a class action under at least one of the three subdivisions of Fed. R. Civ. P. 23(b). Barnes v. Am. Tobacco Co., 161 F.3d 127, 140 (3d Cir. 1998). In considering a motion for class certification, the court does not conduct a preliminary investigation of the merits, but curtails its determination to the requirements of Fed. R. Civ. P. 23. Id. However, the court should "rigorously analyze" the allegations of the complaint relating to the maintainability of the action as a class action. Osgood v. Harrah's Entm't, Inc., 202 F.R.D. 115, 120 (D.N.J. 2001).

  A. Fed. R. Civ. P. 23(a)

Under Fed. R. Civ. P. 23(a),

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Defendant challenges only Fed. R. Civ. P. 23(a)(4), the adequacy of

representation prong.  Under this prong, there are two distinct issues to consider: (1) the qualifications of the counsel to represent the class, and (2) conflicts of interest between the named parties and the class they seek to represent.  <u>Barnes</u>, 161 F.3d at 141.  Plaintiffs appear to have engaged qualified counsel who could adequately represent the class, and the Court sees no apparent conflict of interest between Plaintiffs and the proposed class.  Defendant's contention that Plaintiffs cannot adequately represent the class because they lack standing to bring a claim under ERISA has already been discussed above with regard to Defendant's motion to dismiss, and the Court has found that Plaintiffs have standing under ERISA.  As a result, Plaintiffs have satisfied the requirements of Fed. R. Civ. P. 23(a).

    B.    <u>Fed R. Civ. P. 23(b)</u>

Plaintiffs have chosen to proceed by way of either Fed R. Civ. P. 23(b)(2) or (b)(3).  Fed R. Civ. P. 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  This type of class is most common for civil rights actions and institutional reform cases.  <u>Barnes</u>, 161 F.3d at 142.  Under Fed R. Civ. P. 23(b)(2), a class may seek broad injunctive or declaratory relief for a numerous and often unascertainable or amorphous class of persons.  <u>Id.</u>  The class must be "sufficiently cohesive to warrant adjudication by representation."  <u>Id.</u>  In this type of action, unnamed class members are bound by the action without the opportunity to opt out.  <u>Id.</u> at 142-43.  If significant individualized issues pervade the action, then it would be inappropriate to certify a class under this subsection.  <u>Id.</u> at 143.  The Court finds that the different factual circumstances (especially in regard to the relevant marketing materials and the time of participation) applicable to members of

Plaintiffs' proposed class would make certification under Fed. R. Civ. P. (b)(2) inappropriate.

See id.

> Fed. R. Civ. P. 23(b)(3) requires that
>
>> the court find[] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3) (emphasis added). The predominance inquiry examines whether the "efficiencies gained in resolving these common issues together are outweighed by the individual issues presented for adjudication." Osgood, 202 F.R.D at 130. The superiority inquiry is guided by the four factors listed in Fed. R. Civ. P. 23(b)(3). Id. In the present case, where the EPIC Plan was marketed with different materials at different times, where reliance on misrepresentations must be shown, and where different affirmative defenses based on limitations periods would apply, the Court concludes that individual issues predominate and that certification of a class action under Fed. R. Civ. P. (b)(3) would be inappropriate. See Johnston v. HBO Film Mgmt., 265 F.3d 178, 190-91 (3d Cir. 2001). Therefore, the Court will deny Plaintiffs' class certification motion.

VI.  Cross-Motions for Partial Summary Judgment

Defendant moves for summary judgment on Counts I, IV, V, VI, VII, and VIII of

Plaintiffs' Second Amended Complaint. Count I is a claim under ERISA for breach of fiduciary duty. Counts IV through VIII are claims under FUITPA, and for fraud, conversion, breach of contract, and breach of the duty of good faith and fair dealing under Florida state law. Plaintiffs cross-move for summary judgment on Count I.

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). To survive a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

A.   The ERISA Plan at Issue

As an initial matter, the Court notes that there is some confusion as to the particulars of the ERISA plan in this case. Plaintiffs assert that the ERISA plan under which their claim arises is the USIA Plan, and that the EPIC Plan is not an ERISA plan. Defendant asserts that the EPIC Plan is the ERISA plan at issue and that the USIA Plan is not an ERISA plan, or in the alternative, that the USIA Plan is an ERISA plan, but that Plaintiffs cannot sue under aegis of the USIA Plan because they are no longer participants or fiduciaries of that plan. Whether a plan is an ERISA plan is a "question of fact, to be answered in light of all the surrounding facts and

circumstances from the point of view of a reasonable person." Deibler v. United Food & Comm. Workers' Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992) (quoting Wickman v. N.W. Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990)).  Where the terms of a plan are undisputed, the Court may decide whether that plan is an ERISA plan as a matter of law.  See Foster v. Bell Atl. Tricon Leasing Corp., No. 93 Civ. 4527, 1994 WL 150830, at * 1 (S.D.N.Y. Apr. 20, 1994) ("[W]here the record contains the undisputed terms of the disputed plan, as the record here does, a Court may decide the applicability of ERISA as a matter of law.").  A plan is an ERISA plan if it is a

> plan, fund, or program [that is] . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants of their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1).

In Gruber v. Hubbard Bert Karle Weber, Inc., 159 F.3d 780 (3d Cir. 1998), the Third Circuit elaborated on the standard used to determine whether multi-employer benefit plans are ERISA plans.  Specifically, it noted that ERISA does not cover plans established for entrepreneurial purposes (i.e., to market insurance products or services to others).  Id. at 786. There are two requirements that must be met for a multi-employer benefit plan to be covered by ERISA: (1) the group of employers that establishes and maintains the plan must be a "bona fide" association of employers tied by a common economic or representation interest, unrelated to the provision of benefits, and (2) the employer members of the organization that sponsors the plan must exercise control, either directly or indirectly, both in form and in substance, over the plan.

Id. at 787.

Based on the undisputed facts, the Court finds that the EPIC Plan is not an ERISA plan. See Finderne Mgmt. Co., Inc. v. Barrett, 355 N.J. Super. 170, 186-88 (App. Div. 2002) (citing Gruber, 159 F.3d at 787). The EPIC Plan was created by a group of insurance professionals who marketed the plan to small businesses. There was no group of employers that established and maintained the EPIC Plan. Even if the small businesses that participated in the plan are such a group of employers, they still did not have a common economic or representation interest in the EPIC plan, except for the receipt of benefits. Further, the employer members of the EPIC Plan did not exercise control over the plan. Their main participation was to pay contributions to the plan. Although they may have done some administrative work to pass information along to their employee participants, this kind of work does not constitute control. Although the Court finds that the EPIC Plan is not an ERISA plan, it finds that the USIA Plan is an ERISA plan under 29 U.S.C. § 1002(1), and is the plan at issue in Count I. As discussed above, Plaintiffs have standing to pursue an ERISA claim under the USIA Plan.

B.   ERISA Preemption

Defendant contends that Plaintiffs' state law claims (Counts IV through VIII) are preempted by ERISA because those claims rely on the same cause of action as Count I and relate to an ERISA plan. At oral argument on June 15, 2006, Plaintiffs explained that their state law claims were based on pre-plan representations. Claims based on conduct occurring before a plan is established are not pre-empted by ERISA. Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co., 170 F.3d 985, 991 (10th Cir. 1999). Thus, the Court will allow Count V, Plaintiffs' state law claim for fraud, to proceed to the extent that it is based on actions taken by Defendant

before the USIA Plan was established. However, the Court will dismiss Counts IV, VI, VII and VIII as preempted by ERISA because they relate to actions taken within the framework of the USIA Plan. See Way v. Ohio Cas. Insur. Co., 346 F. Supp. 2d 711, 714 (D.N.J. 2004).

    C.    Breach of Fiduciary Duty Claim Under ERISA

Defendant contends that summary judgment should be granted in its favor on Count I because (1) it is not an ERISA fiduciary with regard to Plaintiffs' premium payments, and (2) Plaintiffs do not seek relief that is allowed by ERISA. Plaintiffs have alleged an ERISA breach of fiduciary duty claim under ERISA § 409, 29 U.S.C. § 1109. As noted above, the test for whether Defendant is an ERISA fiduciary is based on the "functional terms of control and authority over the plan." Mertens, 508 U.S. at 262; see also 29 U.S.C. § 1002(21)(A). Defendant argues that because it placed Plaintiffs' premium payments in its general asset account, the payments were not a plan asset that would trigger fiduciary liability. See Mack Boring & Parts v. Meeker Sharkey Moffitt, 930 F.2d 267, 270 (3d Cir. 1991) (finding that insurer was not an ERISA fiduciary because the assets it maintained in a guaranteed benefit policy as general assets were not plan assets). Plaintiffs allege that Defendant advertised that the premium payments were placed in a separate reserve account, and that Defendant is still an ERISA fiduciary for the Faulman Brothers' policies under the USIA Plan. The Court finds that there are disputed issues of fact regarding whether Defendant's plan is a guaranteed benefit policy, and whether the advertised reserve accounts were separate accounts that would be considered plan assets. Therefore, the Court will allow the issue of whether Defendant is a fiduciary with regard to Plaintiffs' premium payments to proceed to trial.

Although Defendant contends that Plaintiffs cannot seek relief for monetary damages

under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court notes that Plaintiffs can seek such relief through ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). That provision refers to ERISA § 409, 29 U.S.C. § 1109, and requires a fiduciary to "make good to such plan any losses to the plan resulting from [a breach of fiduciary duty]." 29 U.S.C. § 1109.

   D.   Tax Theory

Defendant contends that the Court should grant it summary judgment on Plaintiffs' "Tax Theory" (referring to Plaintiffs' claims regarding misrepresentations of tax benefits and adverse tax consequences) because Plaintiffs took full advantage of the tax benefits of the advertised plan, and cannot be subject to an IRS challenge at this time. Plaintiffs' allegations regarding the tax benefits of the EPIC Plan are disputed material factual allegations that are applicable to more than one count of the Second Amended Complaint. Therefore, the Court finds that summary judgment cannot be granted on this issue.

   E.   Statutes of Limitations for ERISA and FUITPA

Defendant contends that Plaintiffs' claims under ERISA and FUITPA are time-barred. Plaintiffs disagree, and contend that they are within the applicable statutes of limitations. The Court has already dismissed Plaintiffs' FUITPA claim as preempted by ERISA, so it will only consider whether Plaintiffs' ERISA claims are time-barred. The statute of limitations for ERISA bars claims that accrue

> after the earlier of--
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

>   except that in the case of fraud or concealment, such action may be
>   commenced not later than six years after the date of discovery of
>   such breach or violation.

29 U.S.C. § 1113.  Defendant alleges that Plaintiffs knew about the issues in the present case in 1999.  However, Plaintiffs allege that they did not know about problems with the plan until 2001 due to Defendant's fraud and concealment.  The Court will not grant summary judgment based on the ERISA statute of limitations because there are genuine issues of material fact in dispute.

VII.    Conclusion

For the foregoing reasons, and for good cause shown,

IT IS on this 28th day of August, 2006,

ORDERED that Defendant's motion to dismiss [86] is DENIED; and it is further

ORDERED that Defendant's motion to strike [99] is DENIED; and it is further

ORDERED that Plaintiff's motion for class certification [71] is DENIED; and it is further

ORDERED that Defendant's motion for summary judgment [69] is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED that Counts IV, VI, VII and VIII of Plaintiffs' Second Amended Complaint are DISMISSED; and it is further

ORDERED that Plaintiff's cross-motion for summary judgment [73] is DENIED.


                                           s/ Anne E. Thompson
                                           ANNE E. THOMPSON, U.S.D.J.