UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
WILLIAM FAULMAN, et al.,                           :
:
    Plaintiffs,                             :   Civil No. 04-5083 (AET)
:
    v.                                     :   **MEMORANDUM & ORDER**
:
SECURITY MUTUAL FINANCIAL                          :
LIFE INSURANCE COMPANY, et al.,                    :
:
:
    Defendants.                             :
_____:

THOMPSON, U.S.D.J.

    This matter is before the Court on Defendant Security Mutual Financial Life Insurance Company's Second Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56. The Court has decided this Motion based upon the submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendant's Motion is granted in part and denied in part.

BACKGROUND

    At issue in this Motion is whether the terms of an employee benefit plan that provides group term life insurance coverage on behalf of participating employers to their employees entitle either an employer or employee to a refund of the contributions made to the plan.

    Plaintiffs William Faulman and Michael Faulman (the "Faulman brothers") own a small business, U.S. Investment Advisors, Inc. ("USIA"). (Def.'s Statement of Material Facts, ¶ 1.) On December 23, 1994, USIA executed an Adoption Agreement, in which they agreed to be bound by the terms of an employee welfare benefit plan known as the Employers Participating

Insurance Cooperative Welfare Plan and Trust ("EPIC Plan").  (Id., ¶ 9; Def.'s Cert., Ex. 8.)  The EPIC Plan has subsequently undergone a change in plan administration and a couple of name changes as a result, and is currently known as the SFL EPIC Plan.[1]  (Def.'s Statement of Material Facts, ¶ 2.)

The SFL EPIC Plan is administered by Defendant Security Mutual Financial Life Insurance Company ("Security").  (Def.'s Cert., Ex. 1 at ¶ 16.)  The SFL EPIC Plan purchases group term life insurance policies on behalf of participating employers for their employees.[2]  (Def.'s Statement of Material Facts, ¶ 5; Def.'s Cert., Ex. 1 at ¶ 18.)  The premiums paid by participating employers fund the insurance benefits payable to their employees.  (Def.'s Cert., Ex. 1 at ¶ 18.)  According to both the EPIC Plan Document and SFL EPIC Plan Document, which set forth the terms of the benefits employers receive, these group term life insurance policies can be converted to individual life insurance policies upon the employer's termination of its participation in the Plan.  (Def.'s Cert., Ex. 4 at § 3.2(b); id., Ex. 7 at § 3B.)

Not only does Defendant Security administer the SFL EPIC Plan, it also acts as insurer, and furnishes to the SFL EPIC Plan the group life insurance product known as Group Entry Age

---

[1] Defendant has provided copies of a generic EPIC Plan and the SML EPIC Plan, which was the immediate predecessor to the current SFL EPIC Plan.  (See Pls.' Cert., Ex. 4; id., Ex. 7.)  The SML EPIC Plan is known now as the SFL EPIC Plan to reflect Defendant's name change.  (Def.'s Statement of Material Facts, ¶ 10.)  For ease of convenience, the Court will refer to the SML EPIC Plan as the SFL EPIC Plan.  Where appropriate, the Court will cite to provisions of both the EPIC Plan and the SFL EPIC Plan.

[2] The Court notes that Plaintiffs have denied that they received group term life insurance policies under the terms of the EPIC Plan.  (Pls.' Statement of Material Facts, ¶ 5.)  This denial is undermined by the exhibits that Plaintiffs have submitted in opposition to this Motion.  (See Pls.' Cert., Ex. D (Group Life Insurance Policy.))  For the purposes of summary judgment, this Court need only draw from the facts those inferences that are reasonable in Plaintiffs' favor.

Reserve ("GEAR"). (Pls.' Cert., Ex. B (GEAR/EPIC Brochure); id., Ex. D (Group Life Insurance Policy.)) The GEAR marketing materials tout the ease with which a participating employer can fund individual life insurance policies for its employees, explaining that a portion of an employer's contributions are set aside in a rate stabilization reserve account, which offsets the costs of converting a group life insurance policy into an individual one.[3] (Pls.' Cert., Ex. D at SFF000011.)

Plaintiffs contend, in part, that Defendant Security represented to them, both orally and in written materials, that it would maintain its contributions in individual reserve accounts that would be available to Plaintiffs at a later date. (Pls.' Opp'n. 6-7.) Although Plaintiffs note that they commenced the instant litigation after being informed by Defendant in December 2001 that their reserve accounts had no value, (Id. at 7), they appear to now argue that Defendant did in fact maintain such accounts, but instead has misappropriated those funds for its own use. (Id. at 14.)

PROCEDURAL HISTORY

On August 28, 2006, the Court issued an Order [117] addressing a number of motions brought by the parties, including their cross-motions for partial summary judgment on Count I of the Complaint, the breach of fiduciary duty claim under the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Apparently, the parties continue to quarrel

---

[3] Life insurance typically costs more, which translates into higher premiums, for older individuals. GEAR allows a covered employee to convert the group policy provided through his or her employer to an individual one upon retirement for which he or she pays. (Pls.' Cert., Ex. D at SFF000013.) The premium for the individual policy is calculated using the age of the employee at the time of his or her enrollment in GEAR, rather than his or her retirement age. (Id.) In order to provide the converted individual policies to employees at the premiums calculated using the age of entry into GEAR, the employer must pay Defendant Security, the insurer, a conversion charge that is paid from the rate-stabilization reserve account. (Id.)

over which Plan governs Plaintiffs' claims.  For the purposes of this Motion, the Court notes that it previously held that the USIA Plan, which was the means by which Plaintiffs participated in the EPIC Plan, constituted an ERISA plan under which Plaintiffs seek relief.  See Order, Faulman v. Sec. Mut. Fin. Life Ins. Co., No. 04-5083, at 2, 3 (D.N.J. Aug. 28, 2006).

## DISCUSSION

A.     Standard of Review of Motion for Summary Judgment

Summary judgment is appropriate if, on the record, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324.  To survive a motion for summary judgment, a plaintiff cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor.  Anderson, 477 U.S. at 252.

B.  Plaintiffs' Arguments

Plaintiffs argue that Defendant's misappropriation of the funds allegedly held in the reserve accounts constituted a breach of Defendant Security's fiduciary duties under ERISA. (Compl. ¶¶ 87-92.) They also argue that the misappropriation constituted a violation of 18 U.S.C. § 664, which proscribes the misappropriation of funds in an employee benefit plan, and that Defendant violated the federal mail and wire fraud statutes in furtherance of a scheme to misappropriate funds. Plaintiffs contend that these alleged criminal violations constitute a pattern of predicate acts that subject Defendant Security to liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. (Compl. ¶¶ 93-112.)

Plaintiffs also appear to argue that the USIA Plan, held by the Court to be the controlling plan in its previous Order, is distinct from the EPIC Plan, but have failed to produce an alternative document containing the terms they believe apply to this dispute. As best the Court can discern, Plaintiffs argue that the USIA Plan is comprised not only of the EPIC Plan Document, but also of additional written materials and oral representations. (Pls.' Opp'n. 20.)

C.  Breach of Fiduciary Duty Claim (Count I)

Plaintiffs' breach of fiduciary duty claim under ERISA rests, in part, upon a theory that Defendant Security misappropriated the funds it ought to have maintained in a segregated reserve account for Plaintiffs. Defendant Security argues that, insofar as Plaintiffs' theory of breach is predicated on an alleged misappropriation of reserve funds to which Plaintiffs are entitled, the claim cannot stand because the plain language of the EPIC Plan Document forecloses any legal interest Plaintiffs had in the contributions they paid to the Plan. Therefore, Defendant argues, it

5

could not have breached any fiduciary duties it owed Plaintiffs because Plaintiffs were not entitled to funds maintained in reserve accounts.[4]

ERISA plans are interpreted in a manner similar to contracts and are construed as a whole. Kemmerer v. ICI Ams. Inc., 70 F.3d 281, 288 (3d Cir. 1995). The Court may interpret terms that are unambiguous as a matter of law. Id. at 289. A fiduciary who complies with the written terms of an ERISA plan cannot be said to have breached its fiduciary duties. Bennett v. Conrail Matched Savings Plan Admin. Comm., 168 F.3d 671, 679 (3d Cir. 1999); Seborowski v. Pittsburgh Press Co., 188 F.3d 163, 170 (3d Cir. 1999).

Here, Defendant argues that the EPIC Plan Document is the comprehensive document that sets forth the benefits that participating employers and their employees are eligible to receive, and the terms by which they may receive those benefits. With respect to employers' and employees' right to the contributions to the Plan, the Plan Document provides:

> Irrevocability of Contributions Made. The Employer shall have no right, title, or interest in and to the contributions made by it to the Trust; and, no part of the Trust property, nor any income attributable thereto ever shall revert to the Employer or be used for, or be diverted to, purposes other than for the exclusive benefit of the Covered Employees and their beneficiaries. No Covered Employees shall have any right, title, or interest in any contributions to the Trust by the Employer, any portion of the Trust, or any portion of any income attributable to the Trust.

(Def.'s Cert., Ex. 4 (EPIC Welfare Benefit Plan, § 5.2); id., Ex. 7 (SFL EPIC Plan at § 5B.)) (emphasis in original).

Plaintiffs argue that the EPIC Plan provision is taken out of context and is contradicted by additional materials that, together with the EPIC Plan Document, comprise the USIA Plan. This

---

[4] The Court notes that, for the purposes of this Motion, Defendant Security assumes it is a fiduciary with respect to the reserve accounts. (Def.'s Mem. Supp. Summary J. 3 n.1.)

argument is untenable.  While Plaintiffs are correct that a plan need not be written, Deibler v. United Food & Comm. Workers' Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992), in order for an informal writing or oral communication to constitute a plan, "a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Smith v. Hartford Ins. Group, 6 F.3d 131, 136 (3d Cir. 1993) (citing Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982).  At best, only the Group Life Insurance Policy submitted by Plaintiffs meets the test articulated in Smith.  (Pls. Cert., Ex. D.)  However, a rider to this policy refers to the EPIC Plan as the owner of the contract.  (Id. at SFF000015.)  The reference to an existing plan suggests that the insurance policy is not meant to replace or supplement the EPIC Plan.  Smith, 6 F.3d at 136.  The EPIC Plan Document itself meets the Smith test, stating that the EPIC Plan (1) provides group term life insurance that can be converted to individual policies (Def.'s Cert., Ex. 4 at § 3.2(a); id., Ex. 7 at § 3B), (2) allows covered employees to designate their beneficiaries, (Id., Ex. 4 at § 3.3; id., Ex. 7 at § 3C), (3) receives premiums from participating employers that are used to fund the benefits, (Id., Ex. 4 at § 5.1; id., Ex. 7 at § 5A), and (4) outlines the procedures by which beneficiaries can make a claim for benefits.  (Id., Ex. 4 at § 6.1; id., Ex. 7 at § 6A.)  Therefore, the Court will construe the terms of the EPIC Plan Document to analyze the strength of Plaintiffs' breach of fiduciary duty claim under ERISA.

The Court finds the language of § 5.2, "The Irrevocability of Contributions Made" provision, to be unambiguous.  The language plainly forecloses the return of the contributions, regardless of whether they are meant to reside in a reserve account.  Plaintiffs, having executed the Adoption Agreement, cannot now argue that they never expressly consented to be bound by §

5.2. See Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. and Research Found., 334 F.3d 365, 381 (3d Cir. 2003) (noting that "a court's enforcement of a contract generally does not require proof that the parties to [a] contract actually read, and therefore relied upon, the particular terms of the contract").

Additionally, Plaintiffs may not rely on oral representations or other extrinsic material to contradict the meaning of § 5.2. In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 58 F.3d 896, 902 (3d Cir. 1995) (citing cases). Even if Plaintiffs could rely on extrinsic evidence, none of the additional materials that they submitted in connection with their Opposition contradict the EPIC Plan Document. The provisions of some of the documents to which Plaintiffs cite concern the establishment of the rate-stabilization reserve that offsets the costs of converting the group policies to individual ones upon termination of an employer's participation in the Plan. (See, e.g., Pls.' Cert., Ex. L at TC/NS 05473; id., Ex. B at SFF001708.)[5] USIA's annual billing statements from Defendant also make reference to the GEAR reserve. (Pls.' Cert., Ex. E at SFF003131.) As noted above, the rate-stabilization reserve enables employers to fund the costs of converting the group insurance policies to individual ones with lower premiums when their employees retire. These provisions do not, however, entitle Plaintiffs to withdraw the funds held in that reserve. Similarly, it is of no import that Defendant Security allegedly permitted another individual to make withdrawals from a reserve account he held with Defendant

---

[5] The GEAR brochure was distributed in 1995, after Plaintiffs executed the Adoption Agreement and created the USIA Plan. Thus, a document created after the Plaintiffs joined the Plan cannot inform the Court's construction of the terms of the Plan Document. See Huber v. Casablanca Indus., Inc., 916 F.2d 85, 106 (3d Cir. 1990) (holding that, under ERISA, employee benefit plans may not be modified or amended other than by the Plan's prescribed amendment method).

(Pls.' Opp'n. 17 (citing Pls.' Cert., Exs. N, O, P.))  If anything, these documents suggest that the individual in question was a participant in a plan known as COMBO.  (Pls.' Cert., Ex. P at SL3106.)  The provisions of the EPIC Plan preclude Plaintiffs from withdrawing their contributions.

The Court finds that Plaintiffs have failed to produce sufficient evidence to show that there is a genuine issue as to whether the EPIC Plan Document permits either participating employers or covered employees to recover employers' contributions to the EPIC Plan.  Thus, summary judgment on the breach of fiduciary duty claim with respect to the misappropriation theory is granted.

D.     RICO Claims (Counts II and III)

Defendant Security argues that Plaintiffs' RICO claims should be dismissed because the alleged violations of 18 U.S.C. § 664, which prohibits conversion of the assets of an employee welfare benefit plan, rely on the same theory of misappropriation as Plaintiffs' breach of fiduciary duty claim under ERISA.  Plaintiffs argue, without producing any supporting evidence, that Defendant Security also committed mail and wire fraud in violation of 18 U.S.C. § 1341 and § 1343 and that, therefore, their RICO claims founded upon those predicate acts should survive summary judgment.

Because Plaintiffs' theory of misappropriation furnishes a basis of their RICO claims based on violations of 18 U.S.C. § 664, and this Court has decided already that the plain language of the EPIC Plan Document does not entitle Plaintiffs to a return or withdrawal of its contributions, summary judgment is granted with respect to Plaintiffs' RICO claims predicated on violations of the conversion statute.  The Court will require Plaintiffs to furnish a factual basis

for their claims of mail and wire fraud pursuant to Appendix O of the Local Rules so that the Court may determine whether Plaintiffs' remaining RICO claims can withstand summary judgment.

## CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 12th day of October, 2007,

ORDERED that Defendant Security Mutual Financial Life Insurance Company's Second Motion for Partial Summary Judgment [127] is GRANTED with respect to the breach of fiduciary duty claim insofar as it relies on a misappropriation theory in COUNT 1; and it is further

ORDERED that Defendant Security Mutual Financial Life Insurance Company's Second Motion for Partial Summary Judgment [127] is GRANTED with respect to the RICO claims insofar as they are premised on violations of 18 U.S.C. § 664 in COUNTS 2 and 3; and it is further

ORDERED that Plaintiffs must submit to this Court within 15 days a factual basis for their claims of mail and wire fraud in violation of 18 U.S.C. § 1341 and § 1343 pursuant to Appendix O of the Local Rules of this Court.

s/ Anne E. Thompson  
ANNE E. THOMPSON, U.S.D.J.