NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | : | |
| | : | |
| WILLIAM FAULMAN, et al., | : | |
| | : | |
| Plaintiffs, | : | Civil No. 04-5083 (AET) |
| | : | |
| v. | : | **MEMORANDUM & ORDER** |
| | : | |
| SECURITY MUTUAL FINANCIAL | : | |
| LIFE INSURANCE COMPANY, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

THOMPSON, U.S.D.J.

This matter is before the Court on Plaintiffs William Faulman, Michael Faulman, and

U.S. Investment Advisors, Inc.'s ("USIA") Motion for a New Trial pursuant to Fed. R. Civ. P.

59(a)(1).  The Court has decided this Motion based upon the submissions of the parties and

without oral argument pursuant to Fed. R. Civ. P. 78.  For the reasons set forth below, Plaintiffs'

Motion is denied.

BACKGROUND

On October 15, 2004, Plaintiffs' action was removed to federal court by Defendant

Security Financial Life Insurance Company ("Security").  The Complaint was amended twice,

with the second Amended Complaint asserting violations of the Employees Retirement Income

Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., and a number of Florida statutory and

common law causes of action.  Following motion practice, Plaintiffs' claims under ERISA,

RICO, and common law fraud, limited to pre-plan misrepresentations alleged to have been made

by Defendant, survived.  In addition, on October 15, 2007, the Court granted summary judgment

in favor of Defendant on Plaintiffs' theory that they were entitled to a return of their

contributions that were allegedly placed in a reserve fund, finding that the plain language of

Plaintiffs' employee welfare benefit plan, known as the Employers Participating Insurance

Cooperative Welfare Plan and Trust ("EPIC Plan"), foreclosed the possibility of a return of

Plaintiffs' contributions.  Thus, the Court dismissed those portions of Plaintiffs' ERISA and

RICO claims that relied on this reserve fund theory.

A jury trial began on May 19, 2008, and on May 22, 2008, the jury returned a verdict for

Defendant on the RICO and fraud counts.  The record remained open, however, for the parties to

present additional evidence and arguments with respect to the ERISA claim, which was tried

before the Court.  On June 6, 2008, the Court found in favor of Defendant on Plaintiffs' ERISA

claim.  Plaintiffs filed this Motion for a New Trial with respect to the jury verdict on June 20,

2008.

DISCUSSION

Plaintiffs make the following arguments for a new trial: (1) the Court unreasonably

imposed a ten-minute limitation on the parties' opening statements, which Plaintiffs contend

prejudiced their case; (2) the Court interrupted and made improper comments during Plaintiffs'

examination of David Wallman, Defendant's Chief Actuary; (3) the Court improperly excluded

from evidence four categories of documents; and (4) the Court improperly instructed the jury

with respect to Defendant's alleged fiduciary duties towards Plaintiffs, and did not inform the

jury that Defendant could be held liable on either of two theories advanced by Plaintiffs.

A.      Standard of Review for Motion for New Trial

Federal Rule of Civil Procedure 59(a) provides a district court with the discretion to order

a new trial after a jury verdict.  However, "[a] new trial should be granted only when the verdict

is contrary to the weight of the evidence or when a miscarriage of justice would result if the

verdict were to stand."  Brennan v. Norton, 350 F.3d 399, 430 (3d Cir. 2003) (citing Williamson

v. Consol. Rail Corp., 926 F.2d 1344, 1352 (3d Cir. 1991)).  The decision whether to grant a new

trial "is confided almost exclusively to the exercise of discretion" by the district court.  Am.

Bearing Co. v. Litton Indus., Inc., 729 F.2d 943, 948 (3d Cir. 1984) (citations omitted).  Federal

Rule of Civil Procedure 61 dictates that "[u]nless justice requires otherwise, no error . . . is

ground for granting a new trial . . ."  Fed. R. Civ. P. 61.  The court "must disregard all errors and

defects that do not affect any party's substantial rights."  Id.  An "error" is defined as a

"[d]eviation from a legal rule" and it affects substantial rights if the error is prejudicial, i.e., if it

"affected the outcome of the district court proceedings."  Moore v. Vislosky, 240 Fed. Appx.

457, 471 (3d Cir. 2007) (internal citations omitted).

B.      Opening Statements

Plaintiffs argue that the Court's decision, after jury selection, to impose a ten-minute

limitation on the parties' opening statements, on the basis that "jurors cannot absorb a long

speech" (Trial Tr. (sidebar) 5, 6, May 19, 2008.), prejudiced Plaintiffs because it "impaired

[their] ability to provide the jury with an adequate 'roadmap' of the evidence that would be

presented and its significance."  (Pls.' Br. 5.)  However, Plaintiffs acknowledge that "trial judges

have the inherent authority to control the proceedings before them by setting reasonable time

limits for trials."  (Id. at 4.)  Defendant argues that Plaintiffs did not expressly object to the time

limitation at trial, but instead expressed concern about the allotment, and edited their opening

statements accordingly.  Moreover, Defendant contends that Plaintiffs have not demonstrated that

they were prejudiced by adhering to a time limitation that applied equally to both sides.

Plaintiffs rely on the Third Circuit's decision in Duquesne Light Co. v. Westinghouse

Elec. Corp., 66 F.3d 604, 609-10 (3d Cir. 1995) for their argument that the Court acted

unreasonably in imposing a time limit only on the parties' opening statements, and that the Court

should have instead permitted Plaintiffs to control the presentation of the factual and legal issues

of their case.  There, the district court, in the middle of trial, reversed an earlier pre-trial decision

to allot each side 140 hours, and accorded each side 22 days each to present its case.  The

plaintiff in that action was already 11 days into the presentation of its case when the court made

the decision.  Id. at 609.

Here, in contrast, the Court informed the parties of the time limit before trial began, thus

avoiding the change in course that occurred in the middle of the Duquesne trial.  The Court also

advised the parties that it would "question [counsel] as to what [this] witness is here for, . . . and

that will give [counsel] a freebie opportunity to say this witness is to show thus and such and thus

and such." (Trial Tr. (sidebar) 5, 6, May 19, 2008.)  Plaintiff's attorney, having advised the

Court that he needed at least 30 minutes to deliver his opening remarks, requested and received

time to pare his statement to ten minutes.  (Id. at 5-7.)  Although Plaintiffs contend that the

Court's "concern about the attention span of the jurors was unfounded" (Pls.' Br. 5), the Third

Circuit has recognized that "a court's resources are finite and a court must dispose of much

litigation," and that time limits may increase the efficiency of trials.  Duquesne, 66 F.3d at 609-

10.  Defendant's opening statement was also limited to ten minutes.  Plaintiffs argue vaguely that

the time limit impeded their ability to present a roadmap of their evidence, but do not

demonstrate how their case was adversely affected by the shorter opening statement.  Thus, the

Court does not find that its decision to limit both sides to ten minutes for their opening

statements constitutes a substantial error that requires a new trial.

C.      Testimony of David Wallman

Plaintiffs argue that the Court acted improperly by interrupting Plaintiffs' examination of

Mr. Wallman as an adverse witness, and by limiting Plaintiffs' attempts to impeach Mr. Wallman

with testimony from a deposition he gave to the Internal Revenue Service ("IRS") in 2000 in an

unrelated matter.  Further, Plaintiffs argue that the Court erred by admonishing Plaintiffs'

attorney that, under the Federal Rules of Evidence, he should have shown Mr. Wallman his prior

statement before proceeding to impeach the witness with the statement.  Defendant argues that it

was within the Court's discretion not to allow impeachment of a witness by the use of deposition

testimony given in an unrelated manner.  Moreover, Defendant contends that Mr. Wallman's trial

statements were not inconsistent with the deposition testimony with which Plaintiffs' attorney

sought to impeach Mr. Wallman, and that it was not error to limit Plaintiffs' line of questioning.

Defendant also maintains that the Court properly instructed Plaintiffs' attorney to show the prior

statement to Mr. Wallman, and to permit the witness to explain whether the statement was

inconsistent with his trial testimony.

Plaintiffs argue that during Mr. Wallman's examination by Plaintiff's counsel, the

following facts were established:

> that Wallman was aware of a series of agreements between Security and Tri-Core,
> Inc., including an agreement designating Tri-Core as Security's General Agent; that
> Wallman had corresponded on a regular basis with Ronn Redfearn, the President of

Tri-Core, Inc.; that Wallman and Redfearn had signed a number of agreements on behalf of their respective companies; and that Wallman interacted frequently with Redfearn during the period from 1990 to 2000, meeting with Redfearn face-to-face approximately twenty times and also corresponding with him and speaking with him by telephone.

(Pls.' Br. 7.)  Plaintiffs' attorney then sought to impeach Mr. Wallman by asking him about testimony he gave to the IRS in 2000 concerning the existence and nature of agreements between Defendant and Tri-Core, and whether Mr. Wallman knew that Mr. Redfearn was president of Tri-Core.  The questioning in that deposition regarding agreements reads as follows:

Q: And here we ask for any agreements entered into - the company entered into with Tricor, and for that one there was no documents provided, but you did claim that none exist.  Are there?  Do any agreements exist between Tricor and Security Mutual?

A: For marketing, advertising and sales?

Q: Yes.

A: Not that I'm aware of.

(Trial Tr. 99, May 19, 2008 (reading deposition testimony.))  The questioning in Mr. Wallman's IRS deposition regarding his knowledge of Mr. Redfearn's position at Tri-Core reads:

Q: And is [Mr. Redfearn] a principal in Tricor?

A: I don't know for sure what his position is.

(Trial Tr. 104, May 19, 2008.)  Plaintiffs argue that this testimony is inconsistent with his statements at trial:

Q: Okay.  And you're saying you didn't know in 2000 that [Mr. Redfearn] was the principal of Tricor?

A: Again, I saw him as the creator, the owner, the business owner, the principal.  I knew that he was the head of Tricor.  His exact title I would not have recognized and couldn't have told you what it is.

(Trial Tr. 106, May 19, 2008.)  The Court does not find that Mr. Wallman's statements at trial were inconsistent with the answers he provided to the IRS on those points at his deposition in 2000.  Mr. Wallman's knowledge of the existence of agreements, generally, between Defendant and Tri-Core is not rendered inconsistent by his earlier deposition testimony that he was not aware of agreements between Defendant and Tri-Core concerning "marketing, advertising and sales."  Further, the Court does not find that Mr. Wallman's deposition testimony regarding his uncertainty about Mr. Redfearn's position within Tri-Core to be inconsistent with his statements at trial that he believed Mr. Redfearn to be the "creator, the owner, . . . the principal . . . the head" of Tri-Core.  Thus, the Court's decision to limit Plaintiffs' use of Mr. Wallman's deposition testimony for impeachment purposes was not substantial error.

Plaintiffs also contend that some of the Court's statements to counsel prejudiced Plaintiffs because the jury was led to believe that Plaintiffs' attorney was conducting his examination of Mr. Wallman incorrectly, and that the Court's questioning of the relevance of Mr. Wallman's deposition testimony minimized the issue of Mr. Wallman's credibility for the jury. Specifically, Plaintiffs contend that the Court erred when it told counsel, "That's not the way you ask questions about deposition testimony.  You ask the witness, were you asked these questions and did you give these answers . . . [and give the witness a chance] to, explain what he – if, in fact that's the testimony he gave and whether that is consistent with what he thinks at this time." (Trial Tr. 100, May 19, 2008.)  Plaintiffs contend that Federal Rule of Evidence 613(a) applies to Plaintiffs' examination of Mr. Wallman, which states that a prior statement of a witness "need not be shown nor its contents disclosed to the witness at that time."  Fed. R. Evid. 613(a).

Defendant argues that Mr. Wallman's prior deposition testimony is extrinsic evidence, and should have been shown to the witness to permit him to explain whether he believed the statements to be inconsistent, according to Federal Rule of Evidence 613(b).  Even if Plaintiffs are correct that Rule 613(a) applies, and that Plaintiffs' counsel was not required to show Mr. Wallman his prior statement, the Court does not find that any substantial error occurred by asking Plaintiffs to allow Mr. Wallman the opportunity to review his prior statements, and to explain the prior testimony he gave as it related to his trial testimony.

Plaintiffs argue that the Court's interjections while they were attempting to examine Mr. Wallman about the IRS deposition were prejudicial to Plaintiffs' case.  The Court expressed its concerns whether Mr. Wallman's prior deposition testimony would be relevant, given that the deposition was not taken in this case, and told Plaintiffs that, "I'm going to give you a little leeway, but I still don't know that it's relevant."  (Trial Tr. 102, May 19, 2008.)  After Plaintiffs asked Mr. Wallman why he and Defendant had withheld documents from the IRS in 2000, the Court stated, "That's one of those, have you – how long have you been beating your wife type questions . . . [C]ut it down and make it a simple question."  (Trial Tr. 110, May 19, 2008.)  The Court does not find these statements to be prejudicial, but instead curative of any possible confusion in the jurors' minds about the facts at issue in the instant case.  See Markovich v. Bell Helicopter Textron, Inc., 805 F. Supp. 1231, 1240 (E.D. Pa. 1992) (maintaining that a new trial is not warranted unless the movant can demonstrate that a court's comments were so one-sided as to become advocacy) (citing Am. Home Assurance Co. v. Sunshine Supermarket, Inc., 753 F.2d 321, 327 (3d Cir. 1985)).  Moreover, it was not prejudicial to prevent Plaintiffs, having established that Mr. Wallman and Defendant withheld documents from the IRS in an unrelated

proceeding eight years ago and, therefore, having raised an issue with respect to Mr. Wallman's credibility, from exploring the reasons behind the withholding of those documents.  Accordingly, a new trial on this ground is not warranted.

D.       Exclusion of Documentary Evidence

       1.       Culhane Article

Plaintiffs argue that the Court erred by excluding, as hearsay, an article, published in the January 1992 edition of the American Journal of the CLU and CHFC, that warned of tax risks associated with plans that purported to rely on Section 419(A)(f)(6) of the Internal Revenue Code (the "Culhane article").  Plaintiffs contend that the article was admissible as evidence that Defendant was on notice of potential tax problems associated with the EPIC Plan before Plaintiffs began participating in the EPIC Plan, and that the Culhane article demonstrates that Defendant made misrepresentations of fact to Plaintiffs when it stated that contributions to the EPIC Plan were tax-deductible.  Plaintiffs concede that Defendant admitted that Mr. Wallman had received the Culhane article in the Joint Final Pre-Trial Order, and that Plaintiffs read the deposition testimony of Defendant's General Counsel, Patricia Williams, in which she acknowledged that she was aware of the article, into the trial record.  Defendant argues that Mr. Wallman also responded to questions posed by Plaintiffs at trial regarding the article, and the Culhane article is, therefore, cumulative of both Mr. Wallman's and Ms. Williams's testimony regarding their knowledge of the article.

The Court agrees, upon review of the trial record, that there was direct testimony from Mr. Wallman, in addition to Ms. Williams's deposition testimony, to establish that there was notice to Defendant of the article's warnings of tax risks associated with certain retirement plans.

Thus, the Court finds that the Culhane article would have been cumulative, and inferior to

Defendant's own testimony regarding notice.  Therefore, a new trial is not warranted on this

basis.

       2.         Documents Outlining Tax Risks

Plaintiffs next argue that the Court erred by excluding a number of documents, including

an IRS Notice ("IRS Notice 95-34"), and internal documents, including handwritten notes,

created by representatives of Defendant that "came to the attention of Defendant after Plaintiffs

began to participate in the EPIC Plan" (Pls.' Br. 19.)  Plaintiffs maintain that IRS Notice 95-34

was admissible as evidence of notice to Defendant, and that the internal documents were

admissible as party-admissions under Federal Rule of Evidence 801(d)(2).  Defendant contends

that Plaintiffs seek to admit these documents for the truth of the matters asserted, rather than as

evidence of notice.  Further, Defendant argues that these documents are not relevant, because the

Court later found that Defendant was not an ERISA fiduciary with respect to the tax risks

associated with the EPIC Plan.  (June 6, 2008 Order at 15.)

The Court has "wide discretion to admit or exclude evidence under the provisions of the

Federal Rules of Evidence." Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 97 (3d Cir. 1983).

Evidence must be relevant to be admissible.  Thus, a plaintiff must establish a sufficient logical

relationship between the proffered evidence and the plaintiff's theory of the case.  Id.

The Court finds no substantial error in the exclusion of these documents.  In its August

28, 2006 Order, the Court held that claims concerning conduct occurring after Plaintiffs began

participating in the EPIC Plan were preempted by ERISA.  (August 28, 2006 Order at 12-13.)

Thus, documents that may have evidenced Defendant's awareness of tax risks after Plaintiffs

began to participate in the EPIC Plan were not relevant to Plaintiffs' jury claims, and were

properly excluded.  Moreover, any error in excluding these documents was harmless, because the

Court found, with respect to Plaintiffs' ERISA claim, that Defendant did not owe Plaintiffs any

fiduciary duties with respect to the tax risks of the EPIC Plan.  Any knowledge concerning tax

risks that Defendant may have acquired after Plaintiffs commenced participation in the EPIC

Plan would not have been relevant. Accordingly, a new trial is not warranted on this basis.

        3.      Complaints From Other EPIC Plan Participants

Plaintiffs contend that the Court erred by excluding letters of complaint received by

Defendant from other participants in the EPIC Plan.  Plaintiffs argue that these letters were

admissible for the truth, pursuant to the residual hearsay exception under Federal Rule of

Evidence 807, or were admissible as notice to Defendant that other EPIC Plan participants were

confused about both the tax risks and the existence of a reserve fund.  Plaintiffs argue that the

exclusion of these complaints were prejudicial to their case, because the jury was led to believe

that Plaintiffs' primary concerns were about the tax risks of the EPIC Plan, and that Plaintiffs'

belief that a reserve fund existed was unreasonable.

Federal Rule of Evidence 807 provides that a statement that is not categorized under any

other exception to the hearsay rule may be admissible nonetheless, provided that it has

"equivalent circumstantial guarantees of trustworthiness," and that:

> (A) the statement is offered as evidence of a material fact;
> (B) the statement is more probative on the point for which it is offered than any other
> evidence which the proponent can procure through reasonable efforts; and
> (C) the general purposes of these rules and the interests of justice will best be served
> by admission of the statement into evidence.

Fed. R. Evid. 807.  Evidence is to be admitted under this rule "only rarely, and in exceptional

circumstances and applies only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." United States v. Wright, 363 F.3d 237, 245 (3d Cir. 2004) (internal citations and quotations omitted).

The Court finds that these letters, registering complaints by other participants in the EPIC Plan, lack sufficient circumstantial guarantees of trustworthiness. The complaints are self-serving, in that the authors of these letters were motivated to present the facts, including allegations of oral misrepresentations made by sales agents about the EPIC Plan, in a light most favorable to their position that they had been wronged by Defendant. Plaintiffs contend that these letters are trustworthy because Defendant investigated the complaints, and issued refunds of the premiums paid by these partipants. The Court disagrees. Plaintiffs make no offer of proof as to the nature of the investigations conducted by Defendant, or why the complainants received refunds of their premiums, while Plaintiffs did not. Using these letters as substantive evidence that Defendant made misrepresentations to Plaintiffs concerning the tax risks and existence of a reserve fund, without allowing Defendant to cross-examine the complainants, would "implicate[] many of the dangers the hearsay rule is designed to prevent." Kirk v. Raymark Indus., Inc., 61 F.3d 147, 168 (3d Cir. 1995). Thus, the Court finds no substantial error in excluding the complaint letters.

Further, the Court finds no substantial error in its decision to exclude the complaint letters as evidence of notice to Defendant of the inadequacy of their disclosures to EPIC Plan participants of the tax risks associated with the plan. As noted above, the Court found that Defendant did not owe Plaintiffs any fiduciary duties with respect to the tax risks of the EPIC Plan, and, thus, any error in excluding the letters for this reason was harmless.

Plaintiffs also contend that the letters were admissible as evidence of notice that other plan participants erroneously believed that a reserve fund existed.  However, in its October 15, 2007 Order, the Court found that the plain terms of the EPIC Plan foreclosed the possibility of return of Plaintiffs' contributions to the plan, regardless of whether those contributions were paid into a reserve fund.  (October 15, 2007 Order at 8.)  Thus, notice evidence to Defendant of other complainants' beliefs about the reserve fund was not relevant to Plaintiffs' claims.  Accordingly, a new trial is not warranted on this ground.

4.    Letters between Plaintiffs and Defendant

Plaintiffs argue that the Court improperly excluded a September 12, 2001 letter from William Faulman to Defendant, in which he outlined his concerns that the EPIC Plan did not offer the benefits he believed it had, including a reserve fund.  Plaintiffs also contend that the Court should have admitted into evidence three other letters between Plaintiffs' Florida attorney, Charles Garris, and representatives of Defendant, because these letters "were particularly important for the jury to understand the nature of the claims being made, at that time, by Plaintiffs" (Pls. Br. 23), including that Plaintiffs' primary concerns about the EPIC Plan concerned the existence of the reserve fund, and not simply the tax risks.  Defendant argues that the letters properly were excluded as hearsay.

The trial record demonstrates that Plaintiff William Faulman was questioned by Plaintiffs' counsel regarding the September 12, 2001 letter, and that Mr. Faulman testified that he was "shocked" to learn from Defendant that there no reserve fund existed.  (Trial Tr. 121-22, May 20, 2008.)  Mr. Wallman was also questioned about the letter he sent in response to one sent by Mr. Garris.  (Trial Tr. 24-27, May 20, 2008.)  Mr. Garris's letter outlined Plaintiffs' belief

about the EPIC Plan, including that they understood a reserve fund existed.  The Court finds that

these letters are cumulative and inferior to Mr. Faulman's and Mr. Wallman's direct testimony

on these issues.  Further, Plaintiffs made no offer of proof at trial as to why a draft letter prepared

by Defendant in response to Mr. Garris's letter, and never sent to Plaintiffs or Mr. Garris, was

relevant, and, thus, the issue of the letter's admissibility was waived.  Fed. R. Evid. 103(a)(2).

Therefore, a new trial is not warranted on this ground.

E.      Jury Instructions

Plaintiffs argue that the Court made several errors and failures in instructing the jury.

Specifically, Plaintiffs contend that the Court erred by not instructing the jury that Defendant was

a fiduciary of Plaintiffs, and had affirmative obligations to disclose information respecting the

operation of the EPIC Plan.  Plaintiff maintains that "[s]uch an instruction for the period after

Plaintiffs began to participate in the EPIC Plan was critical."  (Pls. Br. 25.)  Plaintiffs also

contend that the Court erred by failing to instruct the jury to disregard, as void under ERISA,

disclaimer language that appeared in the EPIC Plan documents.  Further, Plaintiffs assert that the

Court failed to distinguish Plaintiffs' theories of liability, and instruct the jury that Defendant

could be found liable either if the jury found that Defendant misrepresented the tax risks or

misrepresented the existence of the reserve fund.  Plaintiffs contend that this distinction was

critical because Defendant had waived its statute of limitations defense with respect to the

reserve fund theory of liability, but not with respect to the tax risks theory of liability.

A district court has considerable discretion in the wording of jury instructions and abuses

that discretion only if the instructions confuse and thereby mislead the jury.  Grazier v. City of

Phila., 328 F.3d 120, 126-27 (3d Cir. 2003).  A court need not give a particular instruction

proposed by a party if essential points of law are covered by the instructions given.  Id. at 127.

Further, a new trial may be granted only if "substantial errors were made in . . . the giving or

refusal of instructions."  Moore, 240 Fed. Appx. at 470.

The Court finds that its instructions to the jury were comprehensive and appropriate,

pursuant to controlling case law.  Further, the Court conducted a lengthy charge conference with

Plaintiffs' and Defendant's attorneys on May 21, 2008.  As noted above, Plaintiffs' claims

regarding conduct that occurred after Plaintiffs began to participate in the EPIC Plan were

preempted by ERISA.  Accordingly, the ERISA claim was tried before the Court, rather than the

jury.  See Cox v. Keystone Carbon Co., 894 F.2d 647, 649-50 (3d Cir. 1990) (stating that ERISA

claims for benefits are equitable in nature, and plaintiffs are not entitled to a jury trial).  The

record remained open after the jury returned its verdict to allow additional evidence and

argument concerning the ERISA claim, and the Court issued findings of fact and conclusions of

law on Plaintiffs' ERISA claim on June 6, 2008.  Therefore, it was neither necessary, nor

possible, for the Court to have instructed the jury on the scope of Defendant's ERISA fiduciary

duties.  Similarly, the Court does not find substantial error in electing not to deliver Plaintiffs'

proposed charge that the disclaimer language contained in the EPIC Plan documents was void

under ERISA.

Further, the Court does not find its instructions with respect to the applicability of the

statute of limitations confusing.  The statute of limitations instruction permitted the jury to

consider when Plaintiffs "knew or reasonably should have known they had been injured due to

the alleged conduct of the defendant."  (Trial Tr. 24, May 22, 2008.)  Although the Court's

instructions did not distinguish between Plaintiffs' tax risks and reserve fund theories of liability,

15

Plaintiffs had the opportunity to distinguish their theories of liability in their summation to the

jury.  Thus, the Court finds no substantial error in the instructions it gave to the jury.  Therefore,

the Court denies Plaintiffs' Motion for a New Trial.

CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 12th day of September, 2008,

ORDERED that Plaintiffs William Faulman, Michael Faulman, and U.S. Investment

Advisors, Inc.'s Motion for a New Trial [180] is DENIED.



          s/ Anne E. Thompson
             ANNE E. THOMPSON, U.S.D.J.